UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 3:03-CR-103 (SRU) |
| v. | : | |
| | : | August 18, 2005 |
| KURT C. CLAYWELL | : | |

**SUPPLEMENTAL SENTENCING MEMORANDUM & BILL OF COSTS**

The Government respectfully submits this Supplemental Sentencing Memorandum to bring two additional items to this Court's attention. First, the Government has obtained information from the victim corporation revealing that Claywell is *not* entitled to set off $8,180.14 for an unclaimed class-action settlement payment. As described below, yet again Claywell has engaged in conduct that is designed to deceive this Court and to cheat the victim of his fraud. Second, pursuant to the penalty provisions of 26 U.S.C. § 7206, which provides that the Court shall impose the "costs of prosecution," the Government provides the Court with an accounting of those costs. Third, the Government briefly responds to one argument regarding the defendant's amended tax returns, which was raised today in the Defendant's Reply to Government's Amended Sentencing Memorandum.

**I.   Claywell's Misrepresentation of Allowable Set-offs Against His Fraud Victim**

By letter to the Probation Office on November 25, 2003, defense counsel relayed Claywell's position with respect to the losses attributable to his scheme to defraud Traveler's. Among other things, Claywell had reported to counsel as follows:

> In the Fall of 2002, Mr. Claywell received a notice of a class action settlement which provided for a payment of $8,180.14 arising out of the Travelers contract. Exhibit 7.) *Because of concerns over this case, however, Mr. Claywell never filed the paperwork to obtain that payment.*

Letter dated November 25, 2003, at 2 (attached to Third Addendum to PSR) (emphasis added). On July 5, 2005, Claywell incorporated this 2003 letter into its objections to Claywell's PSR. Nowhere in that July 2005 submission did Claywell modify or correct his statement with respect to the settlement payment.

Information provided by Traveler's now demonstrates that the italicized language is false. Although it may be true that Claywell had not submitted any paperwork as of the date of the original letter in November 2003, he had actively sought to claim these funds for approximately one year before relaying this information to the Probation Office in July 2005. This casts serious doubt on the veracity of his claim that, as of November 2003, the reason he had not filed any paperwork was "[b]ecause of concerns over this case." Specifically, correspondence attached to this motion demonstrates that from April 2004 through March 3, 2005, the defendant -- both personally and through counsel (unaffiliated with defense counsel in the present criminal action) -- actively sought to claim the $8,180.14 at issue, but was rebuffed because he failed to submit sufficient documentation in support of his claim.

For example, on April 12, 2004, Claywell personally called a claim manager at Traveler's in order to determine what paperwork he needed to claim the money. *See* Letter dated November 23, 2004, from Brian Fresher, Counsel, Travelers Life & Annuity, to Rhonda [*sic*] G. Parish, Esq., at 2. On that same day, Claywell faxed a number of documents to Travelers in an effort to claim the payment in question. On April 19, Claywell himself called "looking for the status of the payment," but was informed that he had not submitted adequate documentation. On April 26, a lawyer contacted Traveler's by telephone, and a series of telephone calls and letters ensued. As recently as March 3, 2005, Claywell's attorney wrote yet another letter to Traveler's in an effort

2

to collect the $8,180.14, and disputing the company's claim that Claywell's documentary submissions were inadequate.

Two points are relevant here. First, Claywell has made a material omission in his representations to this Court. He failed to inform this Court that as of the time he submitted his objections to the PSR in July 2005, he had in fact sought reimbursement for the amount in question. Moreover, he failed to inform this Court that Traveler's had rebuffed his claim. Claywell has thereby materially misrepresented to this Court the amount he owes in restitution to Traveler's.

Second, Claywell is trying to opportunistically use a sentencing proceeding to defraud the very victim of his original fraud. In other words, Traveler's has refused to pay Claywell the $8,180.14 on the grounds that he has not substantiated his claim. Rather than press his claim against Traveler's in a court where Traveler's could raise any defenses it might wish, Claywell has effectively sought to use this Court to grant him a right of set-off with respect to the disallowed claim. The irony of Claywell's efforts cannot be missed: He is trying to further cheat his victim in an unrelated matter *through the very sentencing proceeding designed to punish him for cheating that victim in the first place*.

As a result of this deceptive conduct with respect to funds owed to the victim of his fraud, the Government urges the Court (1) to deny the defendant credit for acceptance of responsibility, and (2) to decline to offset the $8,180.14 against the restitution payable to Traveler's. Absent this set-off, the Government respectfully submits that the defendant should be ordered to pay restitution in the amount of $38,853.00.

## II. **Bill of Costs**

Pursuant to the penalty provisions of 26 U.S.C. § 7206, which forms the basis for Count 6 to which the defendant pleaded guilty, the defendant is obligated to pay the costs of prosecution. *See also* U.S.S.G. § 5E1.5 ("Costs of prosecution shall be imposed on a defendant as required by statute."). Allowable costs are identified in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

*See United States v. Procario*, 361 F.2d 683, 684 (2d Cir. 1966) (per curiam) (holding that § 1920 applies to criminal matters). The Government hereby represents that pursuant to § 1920(2), it incurred the following court reporter costs for stenographic transcripts necessarily obtained for use in this case, in the course of grand jury proceedings:

773 pages x $4.50 per page = $3,478.50

Accordingly, the Government respectfully moves for imposition of $3,478.50 in costs of

prosecution as part of the defendant's sentence on Count 6.

**III.    Tax Issues**

In his reply to the Government's sentencing memorandum, Claywell asserts prior to execution of the plea agreement, he reimbursed his corporations for personal expenses that had been paid out of corporate funds. According to the defendant, his amended corporate tax returns now show "increased earnings and corresponding increased tax liability." Reply at 4. Further, he claims that his personal income taxes reflect these "expenditures as loans" and charge "the Defendant with interest and the corresponding income tax for such expenditures." *Id.* at 5.

Three observations are appropriate here. First, the defendant's tax scheme of paying personal expenses out of corporate funds, and disguising them as business expenses had two tax consequences: (1) by failing to include these expenses as personal income, Claywell fraudulently reduced his personal income tax due on his Forms 1040; and (2) by counting these expenses as business deductions, Claywell fraudulently reduced his corporate income tax due on his Forms 1120. Thus, even if the defendant's accountants have now disallowed business deductions attributable to these personal expenses, that undoes only the second half of this particular tax evasion scheme -- that is, by rectifying the understated corporate income tax. (And even then, the Government has not seen any backup documentation establishing that all such false deductions have been disallowed, and therefore cannot offer the Court any evaluation of the veracity of the returns in that regard.) The first aspect of his tax fraud scheme remains: None of the personal expenses have been listed as personal income on his Forms 1040. While it may be true that the defendant has now imputed interest due from himself to his wholly-owned corporations, and that such interest payments are deemed taxable income to the corporation, such

5

an accounting method (not surprisingly) leads to dramatically lower tax liability for the defendant. (Based on conversations with defense counsel, this point is undisputed.) This is so because the imputed interest amounts to far less than the total spent on personal expenses -- so if one taxes only the interest rather than the principal, Claywell's tax liability is significantly reduced.

Second, regardless of whether such an accounting method might be permissible if the defendant ever had a *bona fide* intent to repay these expenses, the fact remains that Claywell has already admitted under oath that he never had such an intention. As provided in the case law cited in the Government's sentencing memorandum, the absence of such an intent forecloses the defendant from advancing the position that he regarded these amounts as loans.

Third, and again based on conversations with defense counsel, it appears that even Claywell's accountants do not contend that the accounting method to which Claywell stipulated in the plea agreement would be incorrect, or somehow violative of the law. In short, Claywell cannot hide beyond some claim that he is caught in a Catch-22 whereby he must violate the plea agreement in order to comply with tax law. Quite to the contrary, the stipulation in the plea agreement requires Claywell to amend his tax returns in the only way that is true and proper: He must report all of the luxuries paid out of his corporate funds as income to him. He was the one driving the speedboat; he is the one parking at the jet-ski dock; and he was the one inviting people to the birthday party. He got the money; he should pay taxes on the money.

In order to achieve each of the goals of sentencing set forth in 18 U.S.C. § 3553, the Government respectfully submits that Claywell should be required to pay a fine at the high end of the applicable guideline range (in this case, $125,000) together with the costs of prosecution set

forth above. The Government also respectfully submits that the defendant should be sentenced to the longest period of supervised release provided by the applicable guidelines, namely three years, U.S.S.G. § 5D1.2(2). Further, in light of his failure to comply with his obligation under the plea agreement to file correct amended tax returns, the Government respectfully requests that the defendant be ordered, as a condition of supervised release, to comply with that obligation within one year of his release from any sentence of imprisonment imposed by this Court. Specifically, the Government requests that the defendant be ordered to file true and accurate amended income tax returns with respect to the tax years 1996-2000 both for himself and his two corporations (Claywell Inc. and Claywell Electric Co.), as well as true and accurate amended quarterly employment tax returns for that period for his two corporations, and that he pay in full all taxes due and owing, together with interest and civil fraud penalties, all before he completes his first year of supervised release.

        Respectfully submitted,

        JOHN H. DURHAM
        DEPUTY UNITED STATES ATTORNEY


        ALINA P. REYNOLDS
        ASSISTANT U.S. ATTORNEY
        Federal Bar. No. CT14968

        for WILLIAM J. NARDINI
        ASSISTANT U.S. ATTORNEY
        Federal Bar No. CT16012
        157 Church Street, 23rd Floor
        New Haven, CT  06510
        Tel.: (203) 821-3748
        Fax: (203) 773-5377
        william.nardini@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August 2005, a true and correct copy of the foregoing pleading was served via fax upon defense counsel:

| | |
|---|---|
| Stanley A. Twardy, Esq. | M. Hatcher Norris, Esq. |
| Day Berry & Howard LLP | Butler Norris & Gold |
| One Canterbury Green | 254 Prospect Ave. |
| Stamford, CT 06901 | Hartford, CT 06101-2041 |

_____
ALINA P. REYNOLDS for WILLIAM J. NARDINI
Assistant U.S. Attorneys